Martin BASKERVILLE,
Plaintiff–Appellant,

v.

R. MULVANEY, A. Zavistaski,
Defendants–Appellees,

John P. Keane, Former Warden, Sing Sing Prison, Langhorn, McElroy, Hughes, Glen S. Goord, Commissioner, Department of Corrections of the State of New York, M.B. Leghorn, a sergeant within the N.Y.S. Department of Correctional Services, Defendants.

Docket No. 03–0348PR.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 31, 2005.

Decided: June 3, 2005.

Patrick A. Bradford Esq., Davis Polk & Wardwell, New York, N.Y. (Lawrence E. Jacobs, James I. McClammy, Lorilee A. Vaughan, and Anne Burton Walsh, Esqs., Davis Polk & Wardwell, New York, NY, on the brief), for Plaintiff–Appellant.

Richard Dearing, Esq., Attorney General's Office, State of New York (Eliot Spitzer, Esq., Attorney General of the State of New York, and Michael S. Belohlavek, Esq., Deputy Solicitor General, of Counsel, on the brief), for Defendants–Appellees.

Before: WALKER, Chief Judge, CARDAMONE, Circuit Judge and OWEN, District Judge *.

OWEN, District Judge.

Plaintiff-appellant Martin Baskerville, a New York State prison inmate at Sing Sing Correctional Facility asserts a civil rights action against defendants-appellees Correctional Officer Richard Mulvaney and Sergeant Andrew Zavistaski. He claims they used excessive force against him in violation of his Eighth Amendment rights during a knock-down incident in a prison corridor on March 23, 1997, and that he was subjected to racial discrimination and religious retaliation in violation of his Fourteenth and First Amendment rights. After a six-day trial before Southern District Judge Barbara S. Jones, the jury necessarily found that while Mulvaney and Zavistaski used substantial force on Baskerville, they did *not* use *excessive* force on him, and given this finding, the district judge dismissed the rest of his complaint. Baskerville's appeal raises two issues which he contends require a new trial: (1) the district court's declining to charge the jury that a "malicious or sadistic" use of force is a *per se* violation of the Eighth Amendment with damages flowing therefrom; and (2) the district court's conclusion that, Baskerville having alleged the use of *excessive* force against him and the jury having found that *no* excessive force was used to control him on his Eighth Amendment claim, a verdict for him on his race discrimination and religious retaliation claims based on some alleged lesser use of force than the as above already determined by the jury to be justified was precluded.

The event underlying Baskerville's claims took place on March 23, 1997. Ac-

* The Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation.

cording to Officer Mulvaney and Sergeant Zavistaski, after finding contraband—$70 cash—in inmate Bryant Rudolph's cell, they escorted Rudolph down a five or six foot wide corridor to the prison hospital for a strip frisk to determine whether he was in possession of more contraband. Rudolph was walking a few feet in front of the officers and had been told to keep his hands in his front pockets. Around the same time, Baskerville, an African American and a member of the Nation of Islam (and wearing a bow tie signifying as much), was mopping the first floor of the hospital. Mulvaney and Zavistaski noticed Baskerville walking up the hallway towards them and, as the inmates passed each other, saw Baskerville veer away from the wall and bump left shoulders with Rudolph. Baskerville testified he was trying to keep to his side of the corridor when "out of nowhere" Rudolph struck him.

Both officers testified that they saw Rudolph's hand come out of his pocket and thought something was being passed from Rudolph to Baskerville, who had released the mop handle and was holding his hands out waist high. Mulvaney then made eye contact with Baskerville, ordered him to stop, and extended his arm out to the wall to block him. However, instead of stopping, Baskerville pushed past Mulvaney and ran toward the slop sink, because, he testified, he thought Rudolph had a weapon, and, while he heard the officer yell "Stop that inmate," he assumed this was directed at the other inmate so he kept going. Believing Baskerville was going to dispose of the contraband that he thought was passed—either by flushing it down the sink or hiding it to retrieve later—Mulvaney chased him down the hallway and grabbed him by the waist, causing both

men to fall. Mulvaney placed Baskerville in a "figure four", or "cross bent leg", hold while Zavistaski handcuffed him. Baskerville testified that Zavistaski said, "All of you niggers think you are something special talking that Farrakhan shit.... Call Farrakhan now," and further testified that Zavistaski then hit him repeatedly on the head and neck and said, "What do you have in your mouth." Zavistaski denied all of Baskerville's allegations. Baskerville also alleged that Mulvaney slapped his head during a strip search following the incident, but Mulvaney denied that claim. No contraband was ever recovered from Baskerville. Neither officer admitted to knowing that Baskerville was a member of the Nation of Islam or recalling whether Baskerville was wearing a bow tie at the time of this incident.[1]

The district court charged the jury as to Baskerville's Eighth Amendment claim as follows:

To establish a constitutional violation under the Eighth Amendment a plaintiff must meet both an objective and a subjective requirement. To satisfy the objective requirement the plaintiff must prove that the violation is sufficiently serious or harmful enough by objective standards. The objective component is "context specific, turning upon 'contemporary standards of decency.'" Hence, a *de minimis* use of force will rarely be sufficiently serious or harmful enough. In other words, not every push or shove, even if it may later seem unnecessary, violates a prisoner's constitutional rights.

To meet the subjective requirement, the plaintiff must prove that one or more of the defendants had a wanton state of mind when they were engaging

---

1. Baskerville testified that, as a result of this incident, he disassociated himself from the Nation of Islam.

in the alleged misconduct. Wantonness turns upon whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously or sadistically to cause harm. To determine whether the defendants acted maliciously you should base your determination on factors including: 1, the extent of the plaintiff's injuries; 2, the need for the application of force; 3, the correlation between the need and the amount of force used and the threat reasonably perceived by the defendants; 4, any efforts made by the defendants to temper the severity of a forceful response. You may also consider whether the force was applied in order to retaliate against the plaintiff for his religious expression or to discriminate against him on the basis of his race. If an evaluation of these and/or other factors leads you to conclude that one or more of the defendants acted maliciously, wantonness has been established and an Eighth Amendment violation has occurred. If, on the other hand, reflection upon these factors leads you to find that the defendants acted in a good-faith effort to maintain and restore discipline, no constitutional violation has occurred because the subjective component of the claim has not been satisfied.

In order for the plaintiff to prove that one or more of the defendants violated his Eighth Amendment right to be free from excessive force, the plaintiff must prove by a preponderance of the evidence both the objective and subjective requirements.

A special verdict sheet was given to the jury. Question One read, "Has the plaintiff proven by a preponderance of the evidence that either defendant used excessive force against him on March 23, 1997 in violation of his Eighth Amendment rights?" The jury was instructed that if it answered "No" to Question One for both defendants, a verdict had been reached and that it should not consider Baskerville's race discrimination or religious retaliation claims. After fifteen minutes of deliberation, the jury reached such a verdict, finding that neither defendant had used excessive force.

■ The first issue on appeal—whether the district court erred when it charged the jury on Baskerville's Eighth Amendment claim—can be disposed of quickly. According to Baskerville, the district court, after instructing on the objective and subjective requirements, *supra*, should have added the statement that "a malicious use of force to cause harm constitutes a violation of the Eighth Amendment *per se* because such malicious or sadistic acts always violate the contemporary standards of decency. Accordingly, there is no need to meet the objective test." We find no error, however, in the instruction the district court did give here. Following the Supreme Court's decision in *Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), we have observed that "an allegation indicating a *de minimis* use of force will rarely suffice to state a constitutional claim, for the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Sims v. Artuz,* 230 F.3d 14, 22 (2d Cir. 2000) (internal quotation marks and citations omitted). While this dictum leaves open the possibility that, in certain circumstances, *de minimis* force might be enough to sustain an Eighth Amendment claim, no such circumstances are present in this case. Thus, the district court did not err by refusing to include a *per se* rule regarding the "malicious" use of force in its instruction to the jury. The district court noted that there is both an objective

and a subjective component to the test for a violation of the Eighth Amendment, and that a "*de minimis* use of force will rarely be sufficiently serious or harmful enough [to constitute a violation of the objective component]." This is consistent with our characterization of the test in *Sims,* 230 F.3d at 20–22, and entirely adequate in the context of Baskerville's trial, where the conduct alleged to have occurred (as support for an allegation plainly rejected by the jury) was not *de minimis* at all, but quite serious. There was thus no danger that the jury might have considered the conduct at issue to have been "malicious," yet not sufficiently serious to meet the objective test as described by the court.

█ Baskerville also appeals the district court's pre-deliberation conclusion that were the jury to find—which it did—that neither defendant had used excessive force, it could not go on to consider Baskerville's racial discrimination and religious retaliation claims flowing from a use of force that was either *de minimis* or otherwise not significant enough to constitute a violation of the Eighth Amendment. Baskerville contends the district court's ruling, as structured in the verdict sheet, improperly grafted Eighth Amendment standards onto his race discrimination and religious retaliation claims, which do not require proof of excessive force. *See Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (noting that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," but not discussing any proof of force requirement); *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001) (requiring plaintiff to prove, *inter alia,* that the defendant took "adverse action" against him to make out a colorable First Amendment retaliation claim). The district court did not disagree with Basker-

ville's legal theory that a corrections officer could push or shove an inmate and such action would not meet the objective threshold of excessive force but might nevertheless be actionable if motivated by racial discrimination or religious retaliation. In the context of this case, however, the district court determined that the evidence before the jury would not support such a theory of actionable *de minimis* force. As the district court articulated in the course of its ruling:

> [Baskerville] did not testify... that he was pushed or shoved during the strip frisk. He testified he was hit and choked.... [T]his is an abuse of force case which is an excessive force case. So I think under these circumstances it would be improper and confusing to the jury to submit the claims of religious retaliation and racial discrimination if under all the circumstances of this case—which is what they're being asked—they have found that [n]either defendant used excessive force. I just find the facts in this case simply wouldn't support any other ruling.

█ Because none of the acts testified to by Baskerville or the defendants was alleged to be *de minimis* or otherwise insignificant, the controlling issue on the excessive force claim was whether Baskerville had met the subjective requirement, by showing that either of the defendants' conduct was "wanton." The core inquiry for the jury, then, was "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson,* 503 U.S. at 7, 112 S.Ct. 995. On the subjective component, the district court's instructions also explicitly allowed the jury to consider "whether the force was applied in order to retaliate against the plaintiff for his religious expression or to discriminate against him on the basis of his race." This

instruction provided the jury with some opportunity to consider the defendants' possible motivations and to find that the defendants' conduct was malicious and sadistic if it determined that the defendants were motivated by Baskerville's race or religion. Although this obviously did not squarely put plaintiff's First and Fourteenth Amendment claims before the jury, it did put all alleged conduct or harm in this case that could possibly form the basis of those claims before the jury. On these facts, that was sufficient. If the jury found, as it did, that the officers' use of force did not violate the Eighth Amendment, they necessarily found that it was justified and applied in good faith, and given this, there was no evidence that could have logically and consistently supported a finding for Baskerville on either his racial discrimination or religious retaliation claim. Accordingly, the district court properly dismissed the balance of the case.

The judgment of the district court is affirmed.